# Illinois Official Reports

## Appellate Court

*James v. Board of Education of the City of Chicago*, 2015 IL App (1st) 141481

| | |
|---|---|
| Appellate Court Caption | RON JAMES, Petitioner, v. THE BOARD OF EDUCATION OF THE CITY OF CHICAGO, DAVID VITALE, President of the Board, BARBARA BYRD-BENNETT, Chief Executive Officer of the Board, JESSE RUIZ, HENRY BIENEN, MAHILIA HINES, PENNY PRITZKER, ROD SIERRA, and ANDREA ZOPP, as Members of The Board, ANNE WEILAND, Hearing Officer, and THE ILLINOIS STATE BOARD OF EDUCATION, Respondents. |
| District & No. | First District, Sixth Division<br>Docket No. 1-14-1481 |
| Filed | February 6, 2015 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The final administrative decision of the Chicago Board of Education resulting in the termination of petitioner's employment as a tenured high school teacher and coach was confirmed based on his conduct in pretending to throw a stapler at a disruptive student, who entered petitioner's classroom cursing, but the stapler's cover came off and flew across the room and struck the head of another student and caused injuries requiring medical attention, notwithstanding the hearing office's suggestion of discipline short of discharge in view of the fact that petitioner had no disciplinary record, was trusted and respected, and the harm was purely accidental, since the Board concluded that petitioner's conduct harmed a student, supported a finding of negligence, was grounds for discharge without a chance for remediation, and did not require a written warning under the School Code, and finally, the Board's decision to dismiss petitioner without a written warning was not clearly erroneous under the facts of the case. |
| Decision Under Review | Petition for review of order of Chicago Board of Education, No. 14-0423-RS3. |

| Judgment | Confirmed. |
|---|---|
| Counsel on Appeal | Kurtis Hale, of Poltrock & Poltrock, of Chicago, for petitioner. |
| | James L. Bebley, General Counsel, and Lee Ann Lowder, both of Chicago Board of Education Law Department, of Chicago, for respondents. |
| Panel | PRESIDING JUSTICE HOFFMAN delivered the judgment of the court, with opinion. Justice Lampkin concurred in the judgment and opinion. Justice Hall dissented, with opinion. |

**OPINION**

¶ 1    The petitioner, Ron James, appeals from a final administrative decision of the Chicago Board of Education (the Board) which resulted in the termination of his employment as a tenured teacher at the Hyde Park Career Academy High School. For the reasons that follow, we confirm the decision of the Board.

¶ 2    On January 10, 2013, the petitioner pretended to throw a stapler at a disruptive student. The stapler detached from its cover, flew across the classroom, and struck another student's head, requiring minor medical attention. As a result of the incident, the Board filed dismissal charges against the petitioner, alleging that he violated several terms of his employment, including refraining from negligent and incompetent conduct and avoiding physical contact with students.

¶ 3    On November 5, 2013, an administrative hearing before the Illinois State Board of Education was conducted at which the petitioner testified that he had been employed as a teacher with Chicago Public Schools (CPS) since 2005, currently teaching social studies and coaching the softball and football teams. He testified that he is a former football and baseball player himself. The petitioner had no history of any disciplinary actions against him.

¶ 4    Regarding the January 10, 2013, incident, the petitioner stated that a disruptive student entered his classroom at the end of his sixth-period class. The student was using vulgar language, demanding that another student retrieve a paper from his locker. The petitioner testified that he told the disruptive student to "stop cursing in my classroom" and "to get out" of the classroom. The student refused and continued cursing at which time the petitioner stated "don't make me bust your head with this stapler." The petitioner testified that he was "being playful" in order to get the disruptive student to behave. The petitioner then stood up and picked up the stapler which was on his desk.

¶ 5    The petitioner identified a similar stapler as the one he had on January 10, 2013. The top part had a plastic covering, and the bottom part of the stapler was metal. He testified that, when he "reached up as if" he was going to throw the stapler, "the stapler slid out of the [plastic]

sleeve" and hit another student, V.H., in the back of her head. He estimated that V.H. was standing about 7 to 10 feet away from him at the time. The petitioner immediately went to check on V.H., but she stated that she was not hurt.

¶ 6    On cross-examination, the petitioner denied that he intended to throw the stapler at the disruptive student. He admitted that a CPS investigator observed that the stapler had traveled a "pretty far distance" and that he responded by stating that he is "a pretty strong guy. I mean, the torque that I put on there with faking like I was throwing it was enough torque that it happened this way." He also admitted that his method, "playful or not," is not the "appropriate method as a teacher to modify a disruptive student's behavior."

¶ 7    D.H., one of the petitioner's students who witnessed the incident, testified that the petitioner told a disruptive student to leave his classroom, and the student did not want to leave so the petitioner tried to scare him. According to D.H., "the stapler managed to come out of his hand and get thrown but it was an accident, and he didn't mean to throw it." D.H. was asked to demonstrate what occurred with the stapler, and the hearing officer described his demonstration for the record as follows: "D.H. has stood up, picked up the stapler in one hand, transferred it to another and raised it about shoulder height, and flicked his wrist with the stapler." When asked how he knew that the stapler was launched "accidentally," D.H. replied "[b]ecause [the petitioner] wouldn't do anything like this." D.H. described V.H. as "emotional" and "shocked" after she was hit with the stapler.

¶ 8    V.H. testified consistently with the petitioner and D.H. She stated that a disruptive student came into the petitioner's classroom, "cursing, going crazy," and the petitioner told the student to leave. V.H. stated that the student continued cursing and refused to leave, and the petitioner responded by telling the student: "get out of my classroom before I throw this stapler at you." According to V.H., "everybody was laughing like we thought he was just joking." However, after that, she was struck by the stapler in the back of her head. The petitioner immediately ran over to V.H., but she pushed him away and went to the dean's office to get a late pass for her next class. While waiting in the dean's office, V.H. noticed that her head was bleeding. She proceeded to the school nurse's office and, later, her mother took her to the hospital, where she was given an ointment for the wound and released. V.H. testified that she experienced blurry vision in her right eye and headaches after being hit by the stapler. She also saw her family physician for her symptoms and has been diagnosed with cluster headaches. V.H. stated that she never suffered from cluster headaches before the stapler injury.

¶ 9    The hearing officer concluded, in relevant part, that the Board had proven, by a preponderance of the evidence, the dismissal charges set forth in charges 2, 3, and 8: that the petitioner failed to act in the manner of a reasonably prudent educator in the supervision of students (charge 2); that the petitioner negligently or incompetently performed an act in connection with his duties (charge 3); and conduct unbecoming a Chicago Public School teacher (charge 8). The hearing officer concluded that the petitioner "was negligent under the terms of 105 ILCS 5/34-85 and his conduct is deemed irremediable. No written warning is required prior to discharge under the code and the Board of Education is within its legal authority to discharge [the petitioner]." However, the hearing officer stated that the unusual facts of the case compelled her to urge the Board "to give consideration to modifying what it can legally do to a more nuanced and reasonable response." Specifically, the hearing officer noted that the petitioner was a respected coach and teacher with six years' tenure and no disciplinary record whatsoever. She also noted that the testimony of the petitioner's students

- 3 -

showed that he was a trusted and respected teacher, and his testimony demonstrated sincere regret for his lapse in judgment which caused harm to V.H. According to the hearing officer, the "actual harm was purely accidental," and she recommended "[s]ome discipline, short of discharge, at the Board's discretion."

¶ 10  On April 23, 2014, the Board issued resolution No. 14-0423-RS3 in which it accepted in part and rejected in part the hearing officer's findings and conclusions and rejected her recommendation for disciplinary action short of discharge. Contrary to the hearing officer's conclusion, the Board determined that it had also proven, by a preponderance of the evidence, the allegations in charge 1, that the petitioner failed to perform his duties. The Board accepted the hearing officer's findings as to charges 2, 3, and 8, but disagreed with her finding that the actual harm caused to V.H. was "purely accidental," noting that this finding was inconsistent with her finding that the petitioner was negligent. The Board determined that the harm caused by the petitioner's conduct was reasonably foreseeable and supported the negligence finding.

¶ 11  The Board then concluded that negligent conduct that harms a student constitutes grounds for discharge without the opportunity for remediation under section 34-85 of the School Code (Code) (105 ILCS 5/34-85 (West 2012)). The Board also found that conduct that in any way causes psychological or physical harm or injury to a student also does not require a written warning under the Code. Therefore, the Board concluded that no written warning was required before discharge and, under the circumstances, dismissed the petitioner from his employment with CPS. The petitioner thereafter filed for review of the Board's decision pursuant to Illinois Supreme Court Rule 335 (eff. Feb. 1, 1994).

¶ 12  This court's review of the Board's decision is governed by the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2012)). See 105 ILCS 5/34-85 (West 2012). The standard of review to be applied to the agency's decision turns on whether the issue presented is a question of fact, a question of law, or a mixed question of law and fact. *Board of Education of the City of Chicago v. Illinois Educational Labor Relations Board*, 2014 IL App (1st) 130285, ¶ 19, *appeal allowed* (Ill. Nov. 26, 2014). We review an agency's conclusion on a question of law *de novo*. *Id.*; *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998). A decision involving a question of fact is afforded deference and will not be reversed unless it is against the manifest weight of the evidence. *Id.* "An administrative agency's factual determinations are contrary to the manifest weight of evidence where the opposite conclusion is clearly evident." *City of Belvidere*, 181 Ill. 2d at 204. Finally, a mixed question of law and fact asks the legal effect of a given set of facts, and we review an agency's conclusion on such a mixed question using a clearly erroneous standard. *Id.* at 205.

¶ 13  Section 34-85 of the Code provides, in relevant part:

"(a) No teacher employed by the board of education shall (after serving the probationary period specified in Section 34-84) be removed except for cause. ***

Before service of notice of charges on account of causes that may be deemed to be remediable, the teacher or principal must be given reasonable warning in writing, stating specifically the causes that, if not removed, may result in charges ***. No written warning shall be required for conduct on the part of a teacher or principal that is cruel, immoral, *negligent*, or criminal *or that in any way causes psychological or physical harm or injury to a student*, as that conduct is deemed to be irremediable." (Emphases added.) 105 ILCS 5/34-85 (West 2012).

¶ 14        In his first contention of error, the petitioner argues that the Board's negligence finding is against the manifest weight of the evidence. The petitioner does not dispute the factual findings that: he pretended to throw the stapler; the stapler detached from its plastic cover; and the stapler flew across the room, striking and injuring V.H.'s head. Rather, he maintains only that it was not reasonably foreseeable that the stapler would have detached from its plastic cover and struck a student. As this presents a question of fact, we review the Board's determination using the manifest weight of the evidence standard. *Board of Education of the City of Chicago*, 2014 IL App (1st) 130285, ¶ 19.

¶ 15        In its decision, the Board found that the harm caused by the petitioner's conduct was reasonably foreseeable, given the facts and circumstances of the case. The Board noted that the petitioner did not "make a mere waving motion of the stapler" but rather "made a strong snapping motion with sufficient force to launch the stapler about ten feet through the air." The Board also recognized that the petitioner, a former baseball player and a coach of softball and football, had a "clear understanding of the strength of his throwing arm and the ability to make a conscious distinction between the force needed to make a point and the excessive 'torque' that he applied to the stapler." The petitioner himself admitted that he was a strong man and that he applied sufficient torque to his pretend throw that the stapler travelled about 10 feet across the classroom. It is also undisputed that the stapler struck V.H.'s head at a force strong enough to necessitate some medical treatment. Based upon the evidence in the record, we do not find that an opposite conclusion is clearly evident, and therefore, we will not disturb the Board's negligence finding.

¶ 16        The petitioner's second contention of error is that the Board lacked sufficient cause to discharge him from his duties. Although "cause" is not specifically defined by the Code, it has been defined as "that which law and public policy deem as some substantial shortcoming which renders a teacher's continued employment detrimental to discipline and effectiveness" (*Raitzik v. Board of Education of the City of Chicago*, 356 Ill. App. 3d 813, 831 (2005)) or "something which the law and sound public opinion recognize as a good reason for the teacher to no longer occupy his position" (internal quotation marks omitted) (*McCullough v. Illinois State Board of Education*, 204 Ill. App. 3d 1082, 1087 (1990)). The existence of sufficient cause is a question of fact for the Board to determine and is reviewed under the manifest weight of the evidence standard; that is, we will not disturb the Board's finding of cause unless an opposite conclusion is clearly evident from the record. *Fadler v. State Board of Education*, 153 Ill. App. 3d 1024, 1026 (1987).

¶ 17        Citing *Chicago Board of Education v. Payne*, 102 Ill. App. 3d 741, 747 (1981), the Board correctly noted that "[c]ause 'connotes some substantial shortcoming rendering continuance in employment detrimental to discipline and effectiveness of service; cause is something that the law and sound public opinion recognize as good reason for the teacher to lose his job.' " The Board charged the petitioner with violating the duties of his employment by failing to act in the manner of a reasonably prudent educator in the supervision of students (charge 2) and failing to use alternative means that would have de-escalated the situation in the classroom (charge 1). The petitioner was also charged with violating the duty to refrain from performing his work in a negligent *or* incompetent manner (charge 3) and to avoid conduct unbecoming of a CPS employee (charge 8).

¶ 18        Here, it is undisputed that the petitioner threatened to throw the stapler at a student in an effort to encourage the student to refrain from his disruptive conduct. The petitioner himself

admitted during the hearing that his method of handling this disruptive student was not the "appropriate method as a teacher to modify a disruptive student's behavior." The petitioner's undisputed actions therefore support the Board's allegations of cause, including those contained in charges 1, 2, 3 and 8. Under these facts, we reject the petitioner's contention that the Board's finding that cause for discharge existed is against the manifest weight of the evidence.

¶ 19    The petitioner's third contention of error involves whether the Board's cause for discharge required that he receive a written warning before his dismissal. Whether a written warning is required before a teacher's dismissal is dependent upon whether the charged conduct is deemed remediable or irremediable. *Younge v. Board of Education of the City of Chicago*, 338 Ill. App. 3d 522, 531 (2003).

¶ 20    Before the Code was amended in 1995, a two-part test applied to determine whether the conduct supporting a dismissal was to be deemed remediable or irremediable. *Gilliland v. Board of Education of Pleasant View Consolidated School District No. 622*, 67 Ill. 2d 143 (1977). That two-part test analyzed: (1) whether the teacher's conduct caused significant damage to students, faculty, or the school; and (2) whether the teacher would not have corrected his conduct, even if he had been issued a written warning and a period of time for remediation. *Ahmad v. Board of Education of the City of Chicago*, 365 Ill. App. 3d 155, 163 (2006) (citing *Gilliland*, 67 Ill. 2d at 153). In 1995, however, the Code was amended to include the language in section 34-85 which explicitly provides that certain types of conduct are to be deemed *per se* irremediable, thereby eliminating the need to apply the *Gilliland* test to those particular types of conduct. *Ahmad*, 365 Ill. App. 3d at 164.

¶ 21    Under section 34-85 of the Code, a teacher's conduct that is "negligent" or "that in any way causes psychological or physical harm or injury to a student" is deemed *per se* irremediable. 105 ILCS 5/34-85 (West 2012). We have already determined that the Board's negligence finding is not against the manifest weight of the evidence. Additionally, the Board found that the petitioner's conduct caused physical harm or injury to V.H., the facts of which are undisputed. Under the provisions of section 34-85, the petitioner's conduct is deemed *per se* irremediable and he was not entitled to a written warning before his dismissal. Accordingly, we find that the Board's ultimate decision to dismiss the petitioner without a written warning is not clearly erroneous under the specific facts of this case.

¶ 22    Based on the foregoing reason, we confirm the decision of the Board.

¶ 23    Confirmed.

¶ 24    JUSTICE HALL, dissenting.

¶ 25    I respectfully dissent from the majority's opinion. Contrary to the majority's holding, I do not believe that the petitioner's negligent conduct in pretending to throw a stapler at a disruptive, unruly student thereby accidentally hitting a second student with the stapler was irremediable *per se* warranting discharge without a written warning or progressive discipline. In finding that petitioner's conduct was irremediable *per se*, the majority relies on the emphasized language of section 34-85 of the Illinois School Code (105 ILCS 5/34-85 (West 2012)), which was quoted as follows:

"(a) No teacher employed by the board of education shall (after serving the probationary period specified in Section 34-84) be removed except for cause. \*\*\*

Before service of notice of charges on account of causes that may be deemed to be remediable, the teacher or principal must be given reasonable warning in writing, stating specifically the causes that, if not removed, may result in charges \*\*\*. No written warning shall be required for conduct on the part of a teacher or principal that is cruel, immoral, *negligent*, or criminal *or that in any way causes psychological or physical harm or injury to a student*, as that conduct is deemed to be irremediable." (Emphases added.) 105 ILCS 5/34-85 (West 2012).

¶ 26    I do not believe that the phrase "physical harm or injury" contained in section 34-85 of the School Code encompasses injury or damage resulting from solely negligent conduct. Most of the cases which found a teacher's conduct to be irremediable *per se* involved criminal or immoral conduct. See, *e.g.*, *Younge v. Board of Education of the City of Chicago*, 338 Ill. App. 3d 522, 534 (2003) (teachers who reported to work under the influence of marijuana, an illegal drug, engaged in criminal and immoral conduct deemed irremediable *per se*); *Ahmad v. Board of Education of the City of Chicago*, 365 Ill. App. 3d 155, 165-67 (2006) (teacher engaged in criminal and immoral conduct deemed irremediable *per se* where she misappropriated merchandise of nonprofit organization by falsely representing herself as an agent of the city's public schools); *Ball v. Board of Education of the City of Chicago*, 2013 IL App (1st) 120136, ¶¶ 31-32 (teacher engaged in immoral and negligent conduct deemed irremediable *per se* where she failed to supervise special needs students enabling students to engage in sexual activity on school property and where she gave false statements to investigator); *Jones v. Board of Education of the City of Chicago*, 2013 IL App (1st) 122437, ¶ 19 (teacher engaged in immoral conduct deemed irremediable *per se* where she fraudulently enrolled her nonresident children in city school so they could receive tuition-free educations).

¶ 27    In comparison to the above-cited cases, I do not believe the petitioner's negligent conduct at issue in this case is irremediable *per se*. The petitioner has no prior record of misconduct in a career spanning several years. The hearing officer pointed out that the petitioner was a coach as well as a teacher and was respected and trusted by his students. The petitioner's conduct in accidentally hitting the student with the stapler was an isolated instance of ordinary negligence that does not constitute conduct that is irremediable *per se*.

¶ 28    Our courts have determined that in order for "conduct to be considered irremediable, the damage caused by that conduct must have been 'significant.' " *Prato v. Vallas*, 331 Ill. App. 3d 852, 862 (2002) (quoting *Board of Education of the City of Chicago v. Illinois State Board of Education*, 160 Ill. App. 3d 769, 776 (1987)). Although I cannot say that the head injury suffered by the student in this case was minor, I do not believe the injury was severe or permanent enough to warrant the petitioner's termination without a prior written warning or progressive discipline. My conclusion is greatly influenced by the fact that the hearing officer who heard the evidence recommended some form of discipline short of discharge. In light of the unusual factual circumstances in this case, I believe the Board should have followed the hearing officer's recommendation.